# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| JILL L.,[1] | : | Case No. 2:22-cv-02480 |
| Plaintiff, | : : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in October 2019. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.  BACKGROUND

Plaintiff asserts that she has been under a disability since September 1, 2019.[2] At that time, Plaintiff was fifty-five years old. (AR, Doc. No. 8-5 at PageID 305.) Accordingly, Plaintiff was considered a "person of advanced age" under Social Security Regulations. 20 C.F.R. §§ 404.1563(d), 416.963(d).[3] Plaintiff has a "limited education."[4] 20 C.F.R. § 404.1564(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 8) is summarized in the ALJ's decision (AR, Doc. No. 8-2 at PageID 42-55), Plaintiff's Statement of Errors ("SE," Doc. No. 10), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12). Plaintiff did not file a Reply Memorandum. Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.  STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other

---

[2] Plaintiff initially alleged that her disability began on January 1, 2018. (AR, Doc. No. 8-5 at PageID 305, 313.) She amended her alleged disability onset date to September 1, 2019 during the February 2021 hearing, at the suggestion of the ALJ. (AR, Doc. No. 8-2 at PageID 71-72.) However, it appears that the ALJ's conclusion that an earlier onset date would be precluded by Plaintiff's substantial gainful activity did not consider the Social Security regulation that governs an unsuccessful work attempt. *See* 20 C.F.R. § 404.1574(a)(1), (c). This regulation may apply because Plaintiff reported that she worked at Zanesville City Schools for less than five months, from May 7, 2019 to September 30, 2019, and she testified that she stopped working because of her impairments. (AR, Doc. No. 8-2 at PageID 70-71; AR, Doc. No. 8-5 at PageID 347; AR, Doc. No. 8-6 at PageID 365.) Because the parties have not raised this issue, the Court will not address it further at this time. However, the Commissioner should consider it upon remand.

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

[4] Plaintiff told the consultative physician in December 2019 that she completed the eleventh grade. (AR, Doc. No. 8-7 at PageID 638.) She confirmed at the February 2021 hearing that she did not graduate from high school. (AR, Doc. No. 8-2 at PageID 68.)

2

eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

4

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since September 1, 2019, the amended alleged onset date. |
| Step 2: | She has the severe impairments of degenerative disc disease and osteoarthritis of the lumbar spine. |
| | She has the following nonsevere impairments: closed fracture of the right rib, hypertension, swelling to the tibial tuberosity of the left knee, mild arthritis of the bilateral hands, depression, and anxiety. |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "can never climb ladders, ropes, or scaffolds; can occasionally kneel and crawl; and must avoid entirely dangerous machinery and unprotected heights." |
| | Plaintiff is able to perform her past relevant work as a customer service representative. |

(AR, Doc. No. 8-2 at PageID 45-54.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 54-55.)

**B.     The ALJ's Evaluation of Plaintiff's Depression and Anxiety**

The ALJ found that Plaintiff's depression and anxiety are nonsevere. (AR, Doc.

No. 8-2 at PageID 46.) The ALJ explained that he considered the "paragraph B" criteria

and concluded that Plaintiff's mental impairments cause no more than mild impairment in

any of the functional areas:

The first functional area is that of understanding, remembering or applying information. In this area, [Plaintiff] has no limitation. Here, [Plaintiff] endorsed problems with memory. However, the record described [her] as "alert" (e.g. Exhibit 1F:4). At [Plaintiff's] consultative examination (Exhibit 6F), [Plaintiff] could recall six digits forward, four digits backward, and two of three words after a brief delay. The examiner noted that [Plaintiff] did not have difficulty responding to questions posed during the examination. [Plaintiff] testified that she drove. At the hearing, [Plaintiff] was able to remember details of past employment and her health.

The next functional area is interacting with others. In this area, [Plaintiff] has mild limitation. At the hearing, [Plaintiff] endorsed problems with irritability. The record shows [Plaintiff] indicating that she had no issues with past employers and coworkers and got along well (Exhibit 9F). [Plaintiff] was cooperative at her consultative examination and indicated that she lives with a friend (Exhibit 6F). [Plaintiff] further denied a history of being disciplined or terminated.

The third functional area is concentrating, persisting or maintaining pace. In this area, [Plaintiff] has no limitation. Here, [Plaintiff] endorsed problems concentrating. For instance, she has difficulty following the plot of a show or movie if she has a lot on her mind. At [Plaintiff's] consultative examination, [Plaintiff] could perform a serial sevens exercise and a serial threes exercise in addition to being able to do basic math problems (Exhibit 6F). Moreover, at the consultative examination, [Plaintiff] did not indicate that she had problems with concentration, persistence, and pace in the workplace. [Plaintiff] could follow the conversation during the interview and did not ask for repetition for questions. [Plaintiff] indicated at the consultative examination that she watches television, listens to music, and uses the internet. [Plaintiff] was able to follow and respond accordingly to questions during the hearing. The record described [sic] as "alert" (e.g. Exhibit 1F:4).

The fourth functional area is adapting or managing oneself. In this area, [Plaintiff] has mild limitation. Here, [Plaintiff] alleged panic attacks. As shown above, [Plaintiff] was noted as "anxious" including during her consultative examination (Exhibit 6F). However, [Plaintiff] was also described as having adequate grooming and hygiene. [Plaintiff] indicated that she had no issues or deficits in independent living or caring for her own needs (Exhibit 9F). [Plaintiff] testified that she spends her days cleaning.

Because [Plaintiff's] medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence

does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(*Id.* at PageID 47-48.)

The ALJ also addressed Plaintiff's mental impairments in the symptom severity evaluation of the RFC analysis. The ALJ initially explained the applicable legal standard for evaluating Plaintiff's symptoms when determining the RFC, as follows:

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering [Plaintiff's] symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) i.e. an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques that could reasonably be expected to produce [Plaintiff's] pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce [Plaintiff's] pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities.

(AR, Doc. No. 8-2 at PageID 51.)

Next, the ALJ summarized Plaintiff's mental health complaints:

Turning to mental impairments, [Plaintiff] endorsed problems with irritability; memory; and concentration. [Plaintiff] explained that she would let you know if she believes she has been treated unfairly. [Plaintiff]

7

indicated that she will start to do one thing but then she will start to do another and cannot remember what she was doing. [Plaintiff] indicated that she could not follow a television show if she has a lot on her mind. [Plaintiff] endorsed anxiety attacks in which she will want to leave a store but cannot. [Plaintiff] testified that she had left her cart in the grocery store before. [Plaintiff] explained that she would try to go to the same place every time to become used to it but experiences anxiety attacks every time that she is in a new place.

(AR, Doc. No. 8-2 at PageID 52.) The ALJ concluded:

After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the objective evidence does not support greater limitations than those found above.

(*Id.*)

## C. Alfred Kirkbride, L.P.C.C.

Plaintiff began outpatient counseling with Mr. Kirkbride in November 2019. (*See* AR, Doc. No. 8-7 at PageID 671, 869-81.) Mr. Kirkbride completed a medical source statement form in January 2020. (*Id.* at PageID 671-72.) He answered the questions as follows:

1.  [Plaintiff] reports currently living with her boyfriend. [Plaintiff] offers no issues [related to] deficits in independent living.

2.  [Plaintiff] reports getting along well with family, but says she doesn't see others often. [Plaintiff] says "It is really just me and my boyfriend". Reports a lot of issues [related to] boundary setting, often feels taken advantage of in friendships. [Plaintiff] reports several examples of meeting people for the first time and that person asking her to drive them places or help them in some way that she is not really able to do (financially for example when asked to drive

8

someone around and having no employment). Per client she has great difficulty saying no [due to] feeling like this makes her a bad person.

3. [Plaintiff] reports no issues with past employers or coworkers, reports getting along well. Does not report being disciplined or fired.

4. [Plaintiff] reports a lot of physical pain that she reports as making work difficult. Also struggles with depression, anxiety, and feeling overwhelmed by same. Struggles with managing stressors.

5. [Plaintiff] reports no legal difficulties.

6. [Plaintiff] reports no issues, and no issues observed [relating to] difficulty with caring for her own needs. Appears able to take care of daily care.

7. [Plaintiff] is very reliable [relating to] attendance to counseling sessions.

8. [Plaintiff] has been very compliant with treatment. Attends sessions, participates well, working on better managing depression and anxiety.

(*Id.* at PageID 672.)

Mr. Kirkbride subsequently completed a checkbox mental capacities assessment form in February 2021. (AR, Doc. No. 8-7 at PageID 917-19.) Mr. Kirkbride indicated that Plaintiff experienced moderate limitation in the ability to accept instructions or respond appropriately to criticism from supervisors or superiors, and also in the ability to respond appropriately to coworkers or peers. (*Id.* at PageID 917.) When asked whether his opinions would change if Plaintiff were required to have only minimal contact or interaction with others, Mr. Kirkbride checked the "yes" box and explained that Plaintiff "works better alone or with few people." (*Id.*)

9

Mr. Kirkbride also indicated moderate impairment in abilities related to adaptation: responding appropriately to changes in work setting; behaving predictably, reliably, and in an emotionally stable manner; and tolerating customary work pressures. (*Id.* at PageID 918-19.) According to Mr. Kirkbride, Plaintiff would likely miss work two or more times (either partial or whole days) per month. (*Id.* at PageID 919.) He indicated that Plaintiff's condition would likely deteriorate if she was placed under the stress of full-time job. (*Id.*) In a handwritten note, Mr. Kirkbride supported his opinion with the explanation that Plaintiff "feels overwhelmed by depression [and] anxiety symptoms, has been overwhelmed in the past, and has been unable to maintain employment." (*Id.*)

The ALJ concluded that Mr. Kirkbride's opinions were not persuasive. (AR, Doc. No. 8-2 at PageID 49.) The ALJ explained:

> First, Mr. Kirkbride did not list objective information to support his findings. Moreover, these opinions are not consistent with the treatment record. This includes the previous statement made by Mr. Kirkbride. For instance, Mr. Kirkbride writes that [Plaintiff] worked better alone or with few people. However, in his previous statement, Mr. Kirkbride noted [Plaintiff] reporting that she had no issues with past employers or coworkers and got along well. In regards to absenteeism and deteriorating under stress, Mr. Kirkbride wrote that [Plaintiff] had been overwhelmed in the past and unable to maintain employment. However, Mr. Kirkbride wrote in his previous statement that [Plaintiff] did not have a history of being disciplined or terminated (Exhibit 9F). As explored in detail above, the treatment record shows [Plaintiff] noted as anxious at times but responding to medications with some noncompliance. [Plaintiff] can independently perform activities of daily living (Exhibit 9F). Because the State agency consultants' opinions are more consistent with the evidence and made with program knowledge, I find them more persuasive.

(*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts just one error: "The ALJ failed to properly evaluate the severity of [Plaintiff's] mental health impairments." (AR, Doc. No. 10 at PageID 1368.) For the reasons discussed below, the Court finds that the ALJ's analysis of Plaintiff's symptom severity does not comply with the applicable rules and regulations, and this error was not harmless. Accordingly, the Court reverses and remands the ALJ's decision.

### A.    The ALJ Failed to Comply with Social Security Ruling (SSR) 16-3p.

#### 1.    *Applicable Law*

The ALJ was required to comply with the applicable Social Security regulations when evaluating Plaintiff's symptoms. *See* 20 C.F.R. § 404.1529. Also, because Plaintiff alleged symptoms of disabling severity, the ALJ was required to use a two-step process when evaluating those symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[5]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id.* Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an

---

[5] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1.  Daily activities;

2.  The location, duration, frequency, and intensity of pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

12

6.     Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.     Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

As part of this analysis, the ALJ is required to determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example, the ALJ will consider whether an individual's statements are consistent with his symptoms, keeping in mind that the statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. However, the

ALJ "will not find an individual's symptoms inconsistent … on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*. The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

Further, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*. at *9. However, an ALJ "will not find an individual's symptoms inconsistent [] on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* The SSR explains, for example, that individuals may not seek or follow treatment due to side effects from medications, an inability to afford treatment, or an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant—or to question the claimant at the administrative hearing—to ascertain the reason(s) for the lack of treatment. *Id*. at *9. The ALJ "*will* explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added).

### 2. *Analysis*

The ALJ erred when analyzing Plaintiff's mental health treatment history. Specifically, the ALJ relied on Plaintiff's apparent noncompliance with treatment to conclude that her symptoms were not entirely consistent with the evidence of record and

that her mental impairments were nonsevere. Because the ALJ did not comply with the requirements of SSR 16-3p when he drew these conclusions, reversal is required.

The ALJ repeatedly stated in his decision that Plaintiff was noncompliant with prescribed medications. For example, in the ALJ's summary of Plaintiff's mental health treatment history at Step Two, he first identified several mental status examinations—that occurred during physical treatment examinations—that were normal. (AR, Doc. No. 8-2 at PageID 47.) The ALJ compared these examinations to other treatment notes which "showed anxiety but [Plaintiff] responding to treatment with some noncompliance." (*Id.*) The ALJ subsequently cited to the March 2020 treatment notes and stated: "[These notes] showed that [Plaintiff] 'sparingly' used Xanax and had stopped taking Celexa and Buspar on her own. [Plaintiff] indicated that Buspar made her stomach upset." (*Id.*)

The ALJ also cited Plaintiff's apparent noncompliance when he concluded that Mr. Kirkbride's opinion was not persuasive: "As explored in detail above, the treatment record shows [Plaintiff] noted as anxious at times but responding to medications with some noncompliance." (AR, Doc. No. 8-2 at PageID 49.) The ALJ made a similar statement when explaining why he found the opinions of the State agency psychological consultants to be persuasive. (*Id.* at PageID 50.)

Finally, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR, Doc. No. 8-2 at PageID 52.)

15

The ALJ's decision does not comply with the Social Security Administration's instruction that ALJs must consider **why** an applicant's treatment history is inconsistent with her complaints when evaluating symptom severity:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. ***We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.*** We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. . . . ***We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.***

SSR 16-3p, 2017 WL 5180304, *9-10 (revised and republished Oct. 25, 2017) (emphasis added). Notably, SSR 16-3p requires an ALJ to consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). An individual's inability to afford treatment and adverse medication side effects are two possible reasons an ALJ should consider when evaluating a lack of treatment. SSR 16-3p at *10.

The ALJ failed to comply with SSR 16-3p because he did not consider possible reasons that Plaintiff failed to comply with treatment consistent with the degree of her complaints. Moreover, the ALJ misconstrued the record regarding Plaintiff's medication compliance. Contrary to the ALJ's statement that Plaintiff "'sparingly' used Xanax and

had stopped taking Celexa and Buspar on her own, Plaintiff told Mr. Kirkbride in January 2020 that she was experiencing increased anxiety and that *her doctor* was "taking her off Xanax" in order to start a trial of BuSpar. (AR, Doc. No. 8-2 at PageID 47; AR, Doc. No. 8-7 at PageID 707.) Numerous notations in the treatment notes confirm that Plaintiff's physician weaned her off of Xanax in response to Plaintiff's reports of inadequate results from the medication. For example, Stephen Knox, M.D. noted in November 2019 that Plaintiff reported that Xanax was "not enough" and that she was waking up with clenched teeth and feeling tense and stiff in the mornings. (AR, Doc. No. 8-7 at PageID 623.) In December 2019, Dr. Knox noted that he discussed Plaintiff's long-term use of Xanax and "[w]ould like to try to wean or eliminate [Xanax] eventually." (AR, Doc. No. at PageID 684.) Dr. Knox added BuSpar to Plaintiff's medication regimen in January 2020. (*Id.* at PageID 691.) Significantly, Dr. Knox noted: "[Plaintiff] has been able to wean down on Xanax; she has not taken any today or yesterday. She is going to continue to work to decrease the amount she is taking. She still gets nervous and anxious throughout the day, especially in social situations." (*Id.*) Dr. Knox also noted that Plaintiff appeared nervous and anxious during the examination. (*Id.* at PageID 692.)

The ALJ also ignored other statements that Plaintiff made to her providers about adverse medication side effects. Plaintiff told Mr. Kirkbride in February 2020 that her new antidepressant medication made her feel "foggy." (AR, Doc. No. 8-7 at PageID 708.) She stated in March 2020 that she had recently stopped taking the medication because it made her feel confused and caused "trouble thinking." (*Id.* at PageID 880.) However, she told Dr. Knox a few weeks later that she wanted to restart the medication because her

17

anxiety was "really up." (*Id.* at PageID 682.) Plaintiff reported feeling less anxious later that month, but she reported struggling with fluctuating moods in May 2020. (AR, Doc. No. 8-7 at PageID 711-12, 743.) Significantly, the ALJ acknowledged in his discussion of the medical evidence that Plaintiff told a provider that BuSpar "made her stomach upset." (AR, Doc. No. 8-2 at PageID 47.) But he did not address or evaluate this reason— or any of the other reasons that appear in the record—when he stated that Plaintiff was noncompliant with treatment, concluded that Plaintiff's symptoms were not entirely consistent with the evidence in the record, and therefore found that Plaintiff's mental impairments were nonsevere. (AR, Doc. No. 8-2 at PageID 47, 49-50.)

The ALJ also did not develop the record regarding possible reasons for Plaintiff's noncompliance, as SSR 16-3p required him to do. During the hearing, the ALJ asked Plaintiff whether she had received treatment for her mental impairments, and Plaintiff replied "Yes." (AR, Doc. No. 8-2 at PageID 77.) But the ALJ did not ask any follow-up questions. (*See Id.* at PageID 77-80.) For example, the ALJ did not ask Plaintiff any questions about her treatment history, prescribed medications, or whether or why she was noncompliant with treatment recommendations. (*Id.*) The ALJ therefore did not develop the record to determine why Plaintiff had made certain choices about treatment.

In sum, the ALJ misconstrued the record about Plaintiff's alleged noncompliance with her doctor's treatment recommendation to take Xanax. He also failed to consider any other possible explanations for Plaintiff's failure to comply with other medication recommendations consistent with the degree of complaints alleged. Nor did the ALJ

develop the record by inquiring about why Plaintiff was noncompliant with treatment. The ALJ's failure to comply with SSR 16-3p is an error of law that warrants reversal.

### B.     The ALJ's Error Is Not Harmless

Defendant argues that "any error in the failure to find a mental impairment severe at step two was harmless." (Mem In Opp., Doc. No. 12 at PageID 1390.) Defendant cites to several Sixth Circuit cases and asserts that the ALJ's failure to find a severe mental impairment is not reversible error because the ALJ found other severe impairments and "therefore had to consider all impairments, severe and not severe, in the sequential evaluation process." (*Id.* at PageID 1390-91, citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x. 425, 427 (6th Cir. 2013).) This argument is not well-taken.

A claimant's burden of establishing a "severe" impairment at Step Two is a "de minimis hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* The goal of the requirement is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). The ALJ reversibly erred when he found that Plaintiff did not satisfy this *de minimis* hurdle.

Moreover, the harmless error rule "is predicated on the notion that the ALJ 'properly could consider claimant's [nonsevere impairments] in determining whether

19

claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity.'" *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The *Winn* court concluded that the ALJ's determination that the plaintiff had no severe mental impairments was not based on substantial evidence, and therefore the ALJ's RFC determination "did not consider [the plaintiff's] mental impairments in a meaningful way." *Winn*, 615 F. App'x at 325-26. Accordingly, the ALJ's error was not harmless and required reversal. *Id.* at 326.

Similarly, in *White v. Comm'r of Soc. Sec.*, the Sixth Circuit held that the ALJ reversibly erred by failing to find a significant mental impairment. 312 F. App'x 779, 787-88 (6th Cir. 2009). The *White* court explained that although the ALJ did not err in finding no severe mental impairments, the ALJ erred because he "gave no explanation for totally discounting the objective evidence of White's mental impairment in determining White's RFC." *Id.* at 787. The court found that the ALJ mischaracterized the evidence regarding the plaintiff's mental impairments and misstated a treating physician's reasons for prescribing antidepressant medication. *Id.* at 787-88. The court concluded that because the ALJ "did not accurately state the evidence used to support his finding, his total discounting of the mental impairment is not supported by substantial evidence." *Id.* at 788. The court also concluded that because the hypothetical question (that restated the RFC) posed by the ALJ to the vocational expert did "not accurately portray White's limitations," the ALJ erred in relying on the vocational expert's answer to the question. *Id.* at 789. This was reversible error. *Id.* at 790.

This case is analogous to *Winn* and *White.* The ALJ stated: "Although non-severe, I considered all of [Plaintiff's] medically determinable impairments in formulating the [RFC] below." (AR, Doc. No. 8-2 at PageID 50.) But as discussed above, the ALJ misconstrued the evidence regarding Plaintiff's compliance with treatment and he also failed to comply with SSR 16-3p. Thus, his determination that Plaintiff does not have any severe mental impairments—and his conclusion that no mental limitations are warranted in the RFC—were both unsupported by substantial evidence and reached without complying with SSR 16-3p. *See White*, 312 F. App'x at 787-88. Because the ALJ's RFC determination does "not consider [Plaintiff's] mental impairments in a meaningful way," these errors are not harmless and require reversal. *See Winn*, 615 F. App'x at 325-26.

## VI.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding

this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above.

On remand, the ALJ should consider whether Plaintiff should be permitted to amend her alleged disability onset date to account for an unsuccessful work attempt. *See* 20 C.F.R. § 404.1574(a)(1), (c). The ALJ should further develop the record as necessary, particularly as to Plaintiff's allegations of symptom severity and the severity of her mental impairments, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 10) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge